**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
VALENTIN TAPIA, ROMULO RICANO
BALDERAS, and EUFEMIA CASTILLO,
*individually and on behalf of others similarly situated,*

                               *Plaintiffs*,

             -against-

BLCH 3RD AVE. LLC. (d/b/a BRICK LANE CURRY
HOUSE), AJIT BAINS and SATINDER SHARMA,

                               *Defendants.*

-----------------------------------------------------------------X

**1:14-cv-8529 (AJN)**
**PLAINTIFFS'**
**PROPOSED FINDINGS**
**OF FACT AND**
**CONCLUSIONS OF LAW**

       Plaintiffs Valentin Tapia (Plaintiff Tapia), Romulo Ricano Balderas (Plaintiff Ricano), and Eufemia Castillo (Plaintiff Castillo), by their attorneys Michael Faillace & Associates, hereby submit their proposed findings of fact and conclusions of law.

     **Plaintiff's Proposed Findings of Fact**

       Facts Relevant to All Plaintiffs

     1.     The Plaintiffs filed this present action in the United States District Court in the Southern District of New York on October 24, 2014  (Proposed Stipulated Fact No. 1)

     2.     Defendants BLCH 3rd Ave LLC., Ajit Bains and Satinder Sharma were timely served with the Complaint. (Proposed Stipulated Fact No. 2)

     3.     Brick Lane Curry House is an Indian restaurant located at 1664 Third Avenue, New York, NY 10128.  (Proposed Stipulated Fact No. 3)

     4.     Plaintiffs are former employees of Defendants BLCH 3RD Ave LLC. (d/b/a Brick Lane Curry House), Ajit Bains and Satinder Sharma, at the restaurant known as Brick Lane Curry House. (Proposed Stipulated Fact No. 4)

5.      BLCH 3RD Ave LLC. is a domestic corporation organized under the laws of the state of New York and maintains its principal executive office at 1664 Third Avenue, New York, NY 10128. (Proposed Stipulated Fact No. 5)

6.      Ajit Bains and Satinder Sharma are shareholders of BLCH 3RD Ave LLC. (Proposed Stipulated Fact No. 6)

7.      At all times relevant to this action, Defendants Ajit Bains and Satinder Sharma jointly determined (1) employees' compensation, (2) determined employees' work hours and schedules, (3) determined employees' statuses as exempt or nonexempt, (4) calculated employees' time worked, (5) reviewed Brick Lane Curry House's payroll, (6) maintained payroll records, (7) managed and supervised employees.  (Proposed Stipulated Fact No. 7)

8.      All at all relevant periods, Defendants' enterprise engaged in commerce or in the production of goods in commerce within the meaning of the FLSA because its employees handle and work on goods and materials that have been moved in and produced for commerce; and had a gross volume of sales and business done of over $500,000.00 per year. (Proposed Stipulated Fact No. 8)

Plaintiff Valentin Tapia

9.      Plaintiff Tapia was employed by Defendants from approximately January 2013 until on or about July 2013. (Tapia Dec. ¶7; P. Ex. 4)

10.     During this time, Plaintiff Tapia was ostensibly employed by Defendants as a delivery worker. (Tapia Dec. ¶8)

11.     However, throughout his employment, Plaintiff Tapia spent over six hours per day performing non-delivery worker duties, including but not limited to various restaurant duties such cleaning and cutting chicken and lamb; sweeping and mopping the entire restaurant; cutting

cilantro; cutting onions; replacing food containers in the refrigerators; washing pans and pots; dishwashing; cleaning the basement with Clorox, soap, and brushes; cleaning the grills and stovetops; taking out the garbage; cleaning filters; ripping apart cardboard boxes and tying them up; carrying down and stocking vegetables, pork, sodas, milk, chicken and other food items in the basement; bringing up food and other items from the basement for the kitchen staff; and washing the sidewalk.  (Tapia Dec. ¶9)

12.     Plaintiff Tapia regularly worked in excess of 40 hours per week. (Tapia Dec. ¶¶13, 21)

13.     Throughout his employment, Plaintiff Tapia regularly worked from approximately 11:00 a.m. until on or about 11:30 p.m. Mondays through Fridays and from approximately 11:00 a.m. until on or about 12:00 a.m. Saturdays. (Tapia Dec. ¶ 13)

14.     At all times, Plaintiff Tapia was paid his wages in cash. (Tapia Dec. ¶15)

15.     At all times, Plaintiff Tapia was paid a fixed salary.  His pay did not vary based on the number of hours he worked each day.  (Tapia Dec. ¶¶15, 18, 19; P. Ex. 4)

16.     Plaintiff Tapia received a flat rate of $290 per week throughout his employment at Brick Lane Curry House.  (Tapia Dec. ¶ 18)

17.     Plaintiff Tapia's salary did not vary based on the number of hours he worked each week.  (Tapia Dec. ¶¶18-19)

18.     When Plaintiff Tapia was required to stay later or work a longer day than his usual schedule, his pay was not increased. (Tapia Dec. ¶19)

19.     Plaintiff Tapia never received overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week. (Tapia Dec. ¶21)

20.     When Plaintiff Tapia was required to stay later or work a longer day than his usual schedule, his pay was not increased. (Tapia Dec. ¶19)

21.     Plaintiff Tapia did not receive any additional compensation for days in which he worked over ten hours in a day. (Tapia Dec. ¶22)

22.     Plaintiff Tapia was never notified by Defendants that his tips would be included as an offset for wages. (Tapia Dec. ¶ 24)

23.     Defendants did not provide Plaintiff Tapia with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Tapia Dec. ¶¶25-26)

24.     Defendants required Plaintiff Tapia to sign a notebook in order to receive his weekly salary.  (Tapia Dec. ¶16; P. Ex. 4)

25.     Defendants did not provide Plaintiff Tapia with any written notice of his hourly pay rate. (Tapia Dec. ¶28)

26.     Plaintiff Tapia was never required to keep track of his time, nor was his time tracked by Defendants using a time tracking device such as a time clock to accurately record the actual hours he worked. (Tapia Dec. ¶23)

Plaintiff Romulo Ricano Balderas

27.     Plaintiff Ricano was employed by Defendants from approximately July 2013 until on or about February 2014. (Ricano Dec. ¶7; P. Ex. 5)

28.     During this time, Plaintiff Ricano was ostensibly employed by Defendants as a delivery worker. (Ricano Dec. ¶8)

29.     However, throughout his employment, Plaintiff Ricano spent approximately six hours per day performing non-delivery worker duties, including but not limited to various

4

restaurant duties such as cleaning and cutting chicken and lamb; sweeping and mopping the

entire restaurant; cutting cilantro; cutting onions; replacing food containers in the refrigerators;

washing pans and pots; dishwashing; cleaning the basement with Clorox, soap, and brushes;

cleaning the grills and stovetops; taking out the garbage; cleaning filters; ripping apart cardboard

boxes and tying them up; carrying down and stocking vegetables, pork, sodas, milk, chicken and

other food items in the basement; bringing up food and other items from the basement for the

kitchen staff; and washing the sidewalk. (Ricano Dec. ¶9)

     30.    Plaintiff Ricano regularly worked in excess of 40 hours per week. (Ricano Dec.

¶¶13, 21)

     31.    Throughout his employment, Plaintiff Ricano regularly worked from

approximately 11:00 a.m. to 11:30 pm. Fridays through Wednesdays, except for the month of

September 2013 when he worked the aforementioned hours all seven (7) days per week. (Ricano

Dec. ¶ 13)

     32.    At all times, Plaintiff Ricano was paid his wages in cash. (Ricano Dec. ¶15)

     33.    At all times, Plaintiff Ricano was paid a fixed salary.  His pay did not vary based

on the number of hours he worked each day.  (Ricano Dec. ¶¶ 15, 18, 19)

     34.    Plaintiff Ricano received a flat salary of $375 per week throughout his

employment at Brick Lane Curry House.  (Ricano Dec. ¶18)

     35.    However, during the month of September 2013, Plaintiff Ricano was paid a flat

salary of $450 per week.  (Ricano Dec. ¶18)

     36.    When Plaintiff Ricano Balderas was required to stay later or work a longer day

than his usual schedule, his pay was not increased. (Ricano Dec. ¶19; P. Ex. 5)

37.     Plaintiff Ricano never received overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week. (Ricano Dec. ¶21)

38.     Plaintiff Ricano did not receive any additional compensation for days in which he worked over ten hours in a day. (Ricano Dec. ¶22)

39.     Plaintiff Ricano was never notified by Defendants that his tips would be included as an offset for wages (Ricano Dec. ¶24)

40.     Defendants did not provide Plaintiff Ricano with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Ricano Dec. ¶¶25-26)

41.     Defendants required Plaintiff Ricano to sign a notebook in order to receive his weekly salary.  (Ricano Dec. ¶16; P. Ex. 5)

42.     Defendants did not provide Plaintiff Ricano with any written notice of his hourly pay rate. (Ricano Dec. ¶¶ 27, 28)

43.     Plaintiff Ricano was never required to keep track of his time, nor was his time tracked by Defendants using a time tracking device such as a time clock to accurately record the actual hours he worked. (Ricano Dec. ¶23)


Plaintiff Eufemia Castillo

44.     Plaintiff Castillo was employed by Defendants from approximately November 1, 2012 until on or about October 5, 2014. (Castillo Dec. ¶7; P. Ex. 3)

45.     During this time, Plaintiff Castillo was employed by Defendants as a dishwasher, but her duties included several other kitchen duties including but not limited to: dishwashing, sweeping, mopping, cleaning the street outside the restaurant, cleaning the refrigerators, cleaning

6

onions, shrimp, meats and other foods, and occasionally making deliveries on foot to nearby customers. (Castillo Dec. ¶8)

46.     Plaintiff Castillo regularly worked in excess of 40 hours per week. (Castillo Dec. ¶¶11-12)

47.     From approximately September 2012 until on or about March 2013, Plaintiff Castillo regularly worked from approximately 11:00 a.m. to 11:30 pm., six (6) days per week (Castillo Dec. ¶ 11)

48.     From approximately March 2013 until on or about October 1, 2014, Plaintiff Castillo regularly worked from approximately 1:00 p.m. to 11:30 pm., five (5) days per week (Castillo Dec. ¶ 12)

49.     At all times, Plaintiff Castillo was paid her wages in cash. (Castillo Dec. ¶14)

50.     At all times, Plaintiff Castillo was paid a fixed salary.  Her pay did not vary based on the number of hours she worked each day.  (Castillo Dec. ¶20)

51.     From approximately November 1, 2012 until on or about February 2013, Plaintiff Castillo was paid a fixed salary of $350 per week. (Castillo Dec. ¶17)

52.     From approximately February 2013 until on or about July 2013, Plaintiff Castillo was paid a fixed salary of $290 per week. (Castillo Dec. ¶18)

53.     From approximately July 2013 until on or about October 5, 2014, Plaintiff Castillo was paid a fixed salary of $315 per week.  (Castillo Dec. ¶19)

54.     Plaintiff Castillo's salary did not vary based on the number of hours she worked each week.  (Castillo Dec. ¶20)

55.     Plaintiff Castillo never received overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week. (Castillo Dec. ¶21)

56.     When Plaintiff Castillo was required to stay later or work a longer day than her usual schedule, her pay was not increased. (Castillo Dec. ¶20)

57.     Plaintiff Castillo did not receive any additional compensation for days in which she worked over ten hours in a day. (Castillo Dec. ¶22)

58.     Defendants did not provide Plaintiff Castillo with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Castillo Dec. ¶¶ 24-25)

59.     Defendants required Plaintiff Castillo to sign a notebook in order to receive her weekly salary. (Castillo Dec. ¶ 15)

60.     Defendants did not provide Plaintiff Castillo with any written notice of her hourly pay rate. (Castillo Dec. ¶¶ 26, 27)

61.     Plaintiff Castillo was never required to keep track of her time, nor was her time tracked by Defendants using a time tracking device such as a time clock to accurately record the actual hours she worked. (Castillo Dec. ¶23)

**Plaintiff's Proposed Conclusions of Law**

Conclusions Applicable to All Plaintiffs

1.      The court has subject matter jurisdiction of this action.  29 U.S.C. § 216(b), 28 U.S.C. § 1337 and 28 U.S.C. § 1331.  (Proposed Stipulation of Law No. 1)

2.      The claims arising under New York law are so related to the FLSA claims that they form part of the same case or controversy, and are therefore within the supplemental jurisdiction of the court.  28 U.S.C. § 1367. (Proposed Stipulation of Law No. 2)

3.      Corporate Defendant BLCH 3RD AVE. LLC. d/b/a Brick Lane Curry House ("Brick Lane Curry House) is an enterprise engaged in commerce or in the production of goods in commerce within the meaning of the FLSA because its employees handle and work on goods and materials that have been moved in and produced for commerce, and they have annual gross sales of $500,000 or more.  (Jurisdictional Statement of JPTO; Proposed Stipulation of Fact No. 8)

4.      Defendants are thus subject to the minimum and overtime wage requirements of the FLSA.  *See* 29 U.S.C. §§ 206, 207.

5.      Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013); *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3); *see also Falk v. Brennan*, 414 U .S. 190, 195 (1973) (emphasizing "expansiveness" of the definition of employer under the FLSA).

6.      Defendants were employers of Plaintiffs under the FLSA and NYLL.

7.      Under both federal and New York state law, an employee must be paid a minimum wage.  29 U.S.C. §206; N.Y. Lab. Law §652.  (Proposed Stipulation of Law No. 3)

8.      The New York minimum wage rate was $7.25 per hour from July 24, 2009 through December 30, 2013; and $8.00 per hour from December 31, 2013 through December 31, 2014. N.Y. Comp. Code R. & Regs. tit. 12, §142-2.1(a) (2013). (Proposed Stipulation of Law No. 4)

9.      From January 1, 2011 through December 31, 2013, the minimum wage rate pursuant to the New York Labor Law was the same as the FLSA, $7.25.  From January 1, 2011 through December 31, 2012, a tipped employee wage was $5.00 per hour for "food service workers," and $5.65 per hour for other "service employees" in the hospitality industry. N.Y. Comp. Code R. & Regs. tit. 12, §142-2.1(a) (2013); 12 N.Y.C.R.R. § 146-1.3.  (Proposed Stipulation of Law No. 4)

10.      Under both federal and New York state law, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek.   29 U.S.C. § 207(2)(C); 12 N.Y.C.R.R. § 146-1.4. (Proposed Stipulation of Law No. 7)

11.      Overtime pay under the FLSA is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1). (Proposed Stipulation of law No. 8)

12.      The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109; 29 U.S.C. § 207(e).

13.      Where an employee receives a straight weekly salary, there is a rebuttable presumption that the salary covers 40 hours worked.  Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS),

2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

14.     Under New York law since January 1, 2011, if an employee in the restaurant industry is not paid an hourly rate, "the employee's regular rate of hourly pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. §146-3.5(b).

15.     Separate from any other regular or overtime wages, under the NYLL when an employee works more than 10 hours on any given day, the employee is entitled to receive "spread of hours" pay, which is an additional one-hour's pay at the applicable minimum wage rate. 12 N.Y.C.R.R. § 146-1.6.  Spread-of-hours pay is excluded from the regular rate for the purposes of calculating overtime pay. 12 N.Y.C.R.R. § 146-1.6(c); 12 NYCRR §137-1.7 (prior to Jan. 1, 2011) (repealed).

Minimum Wage and Overtime

16.     An employee-plaintiff under the FLSA bears the burden of proving that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  A plaintiff may meet this burden "through estimates based on his own recollection." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

17.     Where an employer had failed to maintain accurate and complete records of the hours employees worked and the amounts they were paid, the plaintiff-employee need only to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp*., 121 F.3d 58, 66 (2d Cir. 1997).  The burden then shifts to the employer to come forward with any evidence to either show

"the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to produce such evidence, the court may award damages to the employee, even though the result be only approximate. *Id.* at 688.   In the absence of rebuttal by defendants, the employees' recollections and estimates of hours worked are presumed to be correct.  *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Zhao v. East Harlem Laundromat, Inc.*, 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS 121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).

18.     Federal law requires employers to "make, keep, and preserve" records concerning the "wages, hours, and other conditions and practices of employment" and authorizes the Department of Labor to issue regulations to enforce these requirements. *See* 29 U.S.C. § 211. Under those regulations, employers are required to maintain payroll records for at least three years, and basic timekeeping and earnings records for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a).

19.     New York law requires employers to establish, maintain and preserve "for not less than six years, weekly payroll records which shall show for each employee: (1) name and address; (2) social security number; (3) wage rate; (4) the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift or spread of hours exceeding 10; (5) when a piece-rate method of payment is used, the number of units produced daily and weekly; (6) the amount of gross wages; (7) deductions from gross wages; (8) allowances, if any, claimed as part of the minimum wage; (9) net wages paid; and (10) student classification." 12 NYCRR 142-2.6(a)

20.     Here, Defendants have not produced time records of Plaintiffs' work because Defendants did not maintain any form of accounting of Plaintiffs' work hours. Defendants only produced partial, incomplete pay records, which purportedly reflect weekly salaries.  Accordingly, the aforementioned presumption applies, and Plaintiffs' recollections of their hours worked are fully credited.

Minimum Wage and Overtime – Improper Tip Credit

21.     Under the FLSA, an employer may pay food service employees at a lower tip credit rate if the employee regularly receives more than $30 a month in tips.  29 U.S.C. §§ 203 (m), 203(t).  Such employees may be paid at a rate of $2.13 per hour, provided that when their tips are accounted for, they receive the minimum wage of $7.25 per hour.  29 U.S.C. §203(m); *Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, *9 n. 4, 2013 WL 5308004 (S.D.N.Y. Sept. 20. 2013).

22.     However, section 3(m) of the FLSA ***only*** allows employers to use tips received by tipped employees to partially satisfy the hourly minimum wage requirement if an employee "has been informed by the employer of the provisions of this subsection . . . ." Id. In other words, if an employer fails to inform its tipped employees of the provisions of section 3(m), then no tip credit can be taken, and the employer is liable for the full minimum wage.

23.     An employer may not avail itself of the tip credit unless it notifies tipped employees of its intention to include tip income when calculating wages actually paid for minimum wage purposes, and ensures that all tips received by tipped employees have been retained by the employees. 29 U.S.C. § 203(m); *see Nicholson v. Twelfth Street Corp.*, No. 09 Civ. 1984 (HB), 2010 WL 1780957, at *2 (S.D.N.Y. May 4, 2010) (citations omitted). "These requirements are to be strictly construed." *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635 (LAK)(JCF), 2011 WL

2022644, at *4 (S.D.N.Y. May 2, 2011) (citation and internal quotation marks omitted). Employers bear the burden of showing that they have provided their employees with proper notice of the minimum wage laws. *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007).

24.     Courts have noted that the notice requirement is a firm one. *Copantitla v. Fiskardo Estiatorio*, Inc., 788 F. Supp. 2d 253, 287-89 (S.D.N.Y. 2011) (finding that a restaurant failed to meet the notice requirement even though it displayed a Department of Labor poster, as employees were not explicitly told they would be paid a reduced minimum wage because the restaurant intended to use tips to satisfy its minimum wage obligations).

25.     Proper notice requires "at the very least[,] notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287-288 (S.D.N.Y. 2011) (quoting *Martin v. Tango's Rest., Inc.,* 969 F.2d 1319, 1322 (1st Cir. 1992)).     Before using the tip credit, an employer must inform the employee of (1) the amount of cash wage the employer is paying the employee, (2) the amount they claim as a tip credit, (3) that the tip credit cannot exceed the amount if tips actually received by the employee, (4) the tips received by the employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit will not apply to a tipped employee unless he she has been informed of these tip credit provisions.  U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July    2013)    ("DOL    Fact    Sheet    #15"),    available    at http://www.dol.gov/whd/regs/compliance/whdfs15.pdf.

26.     Additionally, when an employer performs both tipped and non-tipped work, Department of Labor regulations "permit the employer to utilize the tip credit only for hours spent by the employee in the tipped occupation." *Chhab*, 2013 U.S. Dist. LEXIS 135926, at *9 (citing 29 C.F.R. §531.51).   Furthermore, the Department of Labor has issued an opinion that "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Id.*, 2013 U.S. Dist. LEXIS 135926, at *10-11 (citing U.S. Department of Labor, Wage and Hour Division Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet #15"), available at http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf).

27.     New York law also permits an employer to pay a food service employee at a lower "tip credit" rate under certain conditions.   The employee must receive a wage of at least $5.00 per hour, and the total of tips and wages must equal or exceed $7.25 per hour.   12 NYCRR §146-1.3(b).   Additionally, the employer must provide the employee written notice of the employee's hourly rate, overtime rate, and tip credit.   12 NYCRR §146-2.2.

28.     Under New York law, a restaurant employee is not a "food service worker" and may not be paid at the lower tip credit rate if the employee is assigned to do work for which tips are not received for 2 hours or more or for more than 20 percent of her shift, whichever is less.   12 NYCRR §146-3.4.

29.     Defendants' records and the testimony in this action show that Defendants paid delivery worker Plaintiffs a salary that that did not comply with the Federal and New York State law minimum wage requirements.   To the extent they took a tip credit on the delivery worker Plaintiffs' wages under the FLSA, they were not permitted to do so.   Plaintiffs were never informed

of the tip credit's protections, and Plaintiffs performed non-tipped work for more than 20 percent of their shift, and therefore could not be paid at the tip credit rate.  12 NYCRR §146-3.4.

30.     Under both the FLSA and New York Labor Law, Defendants were required to pay Plaintiffs at the regular minimum wage rate of $7.25 per hour, and at the overtime rate of $10.88 for all hours worked above 40 per week between July 24, 2009 and December 31, 2013. Under New York Labor Law, between December 31, 2013 and December 31, 2014 Defendants were required to pay Plaintiffs at the regular minimum wage rage of $8.00 per hour, and at an overtime rate of $12.00 per hour.

31.     Defendants' records and the testimony in this action show that Defendants failed to pay Plaintiffs the minimum wage and overtime wages required by the above provisions of the FLSA and the New York Labor Law.  Accordingly, Defendants are liable to Plaintiffs for the unpaid wages to which they are entitled under the above provisions of the FLSA and the laws of New York. 29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); 12 NYCRR § 146-1.4(a).

32.     Additionally, under the NYLL, a restaurant employee is not a "food service worker" and may not be paid at the lower tip credit rate if the employee is assigned to do work for which tips are not received for 2 hours or more or for more than 20 percent of her shift, whichever is less.  12 NYCRR §146-3.4; *see also* 12 NYCRR §146-2.9.

33.     The evidence has shown that the delivery worker Plaintiffs spent more than 20% of their workdays doing non-tipped work while working as delivery workers.  The delivery worker Plaintiffs had to perform non-tipped work, such as cleaning and food preparation, that consumed more than 20% of their time working.

34.     Plaintiffs are entitled to damages for minimum wage and overtime wage violations under New York law in the amount of $47,523.56, as calculated in Exhibit A.

16

Spread of Hours Under NYLL

35.     Separate from any other regular or overtime wages, under the NYLL an employee whose workday exceeds an interval of ten (10) or more hours is entitled to receive "spread of hours" pay for that day, i.e., an additional one-hour's pay at the applicable minimum wage rate. 12 N.Y.C.R.R. § 146-1.6.  Spread-of-hours pay is excluded from the regular rate for the purposes of calculating overtime pay.  12 N.Y.C.R.R. § 146-1.6(c).  (Proposed Stipulation of Law No. 19).

36.     Defendants regularly failed to pay Plaintiffs spread of hours pay when their workday exceeded an interval of ten or more hours. Defendants are liable to Plaintiffs for spread of hours pay, in the amount of $6,530.75 as calculated in Exhibit A.

Wage Notice and Wage Statements Under the NYLL

37.     Under the NYLL, employers must provide employees with wage and hour notices. NYLL §195(1)(a).  Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.  Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment.  *Id.*  An employee who does not receive such notices can recover damages of $50 per week, up to a statutory maximum of $2,500.  NYLL §198(1-b).  Employees can maintain a private right of action for damages, whether they were not given wage notices when they started, or were existing employees who did not receive annual notices.  *See Cuzco v. F & J Steaks 37th St, LLC*, 2014 U.S. Dist. LEXIS 72984, *10-*12 (S.D.N.Y. May 28, 2014) (existing employees have private right of action for failure to provide wage notices annually).   These requirements went into effect on April 9, 2011.

38.     Plaintiffs in this matter were never given wage notices pursuant to NYLL §195(1)(a).

39.     Plaintiffs are each entitled to damages of $50 per week of violation, up to a maximum of $2,500, as calculated in Exhibit A

40.     The NYLL also requires employers to provide wage statements with each payment of wages, which must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." NYLL §195(3).

41.     An employee who does not receive such statements can recover $100 per week of violation, up to a maximum of $2,500.  NYLL §198(1-d).

42.     Brick Lane Curry House did not provide Plaintiffs with wage statements upon payment of their weekly salaries pursuant to NYLL §195(3).

43.     Plaintiffs are entitled to statutory damages of $100 per week, up to a maximum of $2,500, as calculated in Exhibit A.  NYLL §198(1-d).

<u>Individual Employers</u>

44.      Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013);  see 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3); *see also Falk v. Brennan*, 414 U .S. 190, 195 (1973) (emphasizing "expansiveness" of the definition of employer under the FLSA).

45.     Under the FLSA, employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §203(d).  "The Supreme

Court has recognized that `broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).  Accordingly, the Supreme Court has "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Id.*

46.     Individual Defendant Satinder Sharma is an employer under the FLSA.  The testimony and evidence at trial shows that this individual Defendant, among other things, (1) gave directions to employees, including the Plaintiffs, on a regular basis, (2) was frequently physically present at Brick Lane Curry House and had roles in the management and operations of the restaurant, and (3) is viewed by employees as the owner.

47.     While the question of whether the same test for employer status applies under the NYLL was left open by the 2nd Circuit in *Irizarry*, *id.* at 117-118, "district courts in this Circuit have consistently interpreted the definition of `employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Ho v. Sim Enters.*, 2014 U.S. Dist. LEXIS 66408, *26 (S.D.N.Y. May 14, 2014); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 940 (S.D.N.Y. 2013).

Liquidated Damages under FLSA and NYLL

48.     Under the FLSA, once liability is established the employee is entitled to recover all unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  The employer can only escape liability for liquidated damages if it demonstrates it acted in good faith.

49.     Similarly, under the New York Labor Law, an employee is entitled to recover liquidated damages unless the employer proves a good faith basis for having failed to pay the required wages.  N.Y.L.L. §663(1); *Hart*, 967 F.Supp.2d at 936-37.

50.     In order to establish a good faith defense, under both the FLSA and NYLL, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness . . . . The burden, under 29 U.S.C. §260, is a difficult one to meet, however, and double damages are the norm, single damages the exception."  *Ho*, 2014 U.S. Dist. LEXIS 66408 at *45 (quoting *Reich*, 121 F.3d at 71).  "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them."  *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425, *13, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) (quoting *Barfield*, 537 F.3d at 150).

51.     Defendants did not act in good faith.  The Defendants have not identified specific active steps they took to ascertain what the FLSA and NYLL required of them, and to comply with those requirements.

52.     Defendants' violations also were willful.  The willfulness can be inferred from Defendants' practice of failing to record any of Plaintiffs hours worked over the course of several years, even though Plaintiffs worked more than 40 hours every week.

53.     A plaintiff may recover both FLSA and NYLL liquidated damages for overlapping periods of time.  *See, e.g.*, *Ho*, 2014 U.S. Dist. LEXIS 66408 at *47-*51 ("This Court adopts the rationale followed by the majority of district courts in this Circuit and concludes that plaintiffs may recover liquidated damages under both FLSA and the NYLL"); *Merino v. Beverage Plus Am. Corp.*, 2012 U.S. Dist. LEXIS 140679,*8 (S.D.N.Y. Sept. 25, 2012) ("Most courts in this Circuit hold that a plaintiff may recover both forms of liquidated damages because the FLSA's damages

are meant to be compensatory, while the state damages are meant to be punitive;" following majority of courts and awarding recovery of liquidated damages under both FLSA and NYLL); *McLean*, 2012 U.S. Dist. LEXIS 55425 at *25-26 ("FLSA liquidated damages and NYLL liquidated damages serve fundamentally different purposes, and the plaintiffs are entitled to both FLSA and NYLL liquidated damages for unpaid wage").

54.     Accordingly, Plaintiffs are entitled to receive liquidated damages of 100% under the FLSA from October 24, 2011 to the present (as discussed below, Plaintiffs are entitled to a three year statute of limitations under the FLSA), plus 100% liquidated damages under the NYLL from April 9, 2011 to the present, as calculated in Exhibit A.

Statute of Limitations

55.     The statute of limitations under the FLSA is two years from the filing the Complaint, except that an action based on a willful violation may be commenced within three years of the violation.  29 U.S.C. §255(a).

56.     "An employer has willfully violated FLSA if it either acted knowingly or 'showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . '" *Ho*, 2014 U.S. Dist. LEXIS 66408, at *35 (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

57.     The statute of limitations for claims brought under the NYLL is six years.  N.Y. Lab. Law § 663(3).

58.     Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).

59.     Plaintiffs began working less than two years before they filed this action.  Plaintiffs may therefore recover unpaid minimum and overtime wages under the FLSA and New York state laws for the entire period of their employment for Defendants.

Prejudgment Interest

60.     The Court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay for NYLL claims.  N.Y. Lab. Law § 198(1-a); *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *27 ("courts typically award prejudgment interest on damages for NYLL violations").

61.     Under New York law, prejudgment interest can be awarded in addition to liquidated damages.  This is because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages.  *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *Aff. 'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

62.     Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest.  This interest rate is appropriate only for back pay awarded solely under state law claims.  *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, n.7 at 150 (2d Cir. 2011).  As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).  When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date.  *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *28 ("prejudgment interest on the Plaintiff' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date").

63.     Plaintiffs are entitled to prejudgment interest at the rate of nine percent per annum on their New York state law claims, computed from the median of each relevant period to the date of judgment.

Attorneys' Fees and Costs

64.     The FLSA and the NYLL both contain fee-shifting provisions for actions to recover unpaid wages.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law §§ 198(1-a), 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court"). Accordingly, Plaintiffs are entitled to an award of attorneys' fees and costs in an amount to be determined after trial.

Additional Interest if Judgment Not Paid

65.     The judgment against Defendants should provide that if any amounts of the damages under the NYLL remain unpaid ninety days after issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the judgment shall automatically increase by fifteen percent.  NYLL §198(4).

Dated:  New York, New York
        November 20, 2015

                                    __/s/ Raquel A. Gutiérrez
                                    Raquel A. Gutiérrez, Esq.
                                    Joshua S. Androphy, Esq.
                                    Michael A. Faillace, Esq.
                                    MICHAEL FAILLACE & ASSOCIATES, P.C.
                                    60 East 42nd Street, Suite 2540
                                    New York, NY 10165
                                    (212) 317-1200
                                    *Attorneys for Plaintiffs*