UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Valentin Tapia, *et al.*,

                Plaintiffs,

    –v–

Blch 3rd Ave. LLC, *et al.*,

                Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 01 2016

14-cv-8529 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs Valentin Tapia ("Tapia"), Romulo Ricano Balderas ("Balderas"), and Eufemia Castillo ("Castillo") brought this action against their former employer, Brick Lane Curry House, and its owners, for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL") §§ 190 *et seq.* and 650 *et seq.* Plaintiffs allege that Defendants failed to pay legally required minimum, overtime, and spread-of-hours wages, failed to provide Plaintiffs with required statements and notifications, and failed to reimburse Plaintiffs for the costs of purchasing and maintaining equipment. The Court held a bench trial on April 18, 2016, and now issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The Court concludes, after carefully considering the evidence before it, the arguments of counsel, their written submissions, and the controlling law on the issues presented, that Plaintiffs have met their burden of proof on all of their claims against the restaurant, but that they have not met their burden of proof against the individual defendants. The Court awards damages set forth below, but reserves judgment on interest and attorneys' fees and costs.[1]

---

[1] Plaintiffs' post-trial memorandum of law, Dkt. No. 81, concludes by requesting that "Plaintiffs be granted judgment against Defendants, in an amount to be determined in the subsequent liability phase." The Court never bifurcated liability and damages proceedings in this case. Accordingly, the Court awards damages as established on the record.

1

I.  **Background**

This case has a long history of significant delay by Defendants. Plaintiffs filed their complaint on October 24, 2014. Defendants failed to appear or timely answer. On March 9, 2016, more than three months after the deadline to answer had passed, Defendant Satinder Sharma ("Sharma") wrote to the Court *pro se* to request an adjournment of the initial pretrial conference, originally scheduled for March 13, 2015. Dkt. No. 9. The Court postponed the conference until April 17, 2015, but cautioned Sharma that the corporate defendant could not proceed *pro se*. Dkt. Nos. 10, 11. Certificates of default issued on April 16, 2015. Defendants appeared at the conference on April 17, 2015, represented by Nitin Kaushik, and requested an extension of time to answer. The Court permitted Defendants to answer despite the default and the delay. Dkt. No. 17. Defendants filed an answer on May 1, 2015. Dkt. No. 19.

Even after Defendants' appearance, the case continued to proceed slowly due to Mr. Kaushik' failure to follow the Court's orders, culminating in his failure to file required pretrial submissions by the Court's November 20, 2015, deadline. *See* Dkt. Nos. 20, 39, 43, 50. A status conference was held on December 4, 2016, and a bench trial was scheduled for January 11, 2016. Dkt. No. 43. Mr. Kaushik withdrew from the case on December 18, 2015, on the grounds that he could not be present for the January 11, 2016, trial date. Dkt. No. 52. He was replaced as defense counsel by Nadi Ganesan Viswanathan, who noticed his appearance on December 21, 2015. Dkt. No. 54.

Shortly after his appointment, Mr. Viswanathan requested that the Court reopen fact discovery and postpone the trial date. To prevent Mr. Kaushik's behavior from unduly prejudicing his clients, the Court reopened fact discovery until February 4, 2016, and rescheduled the bench trial for April 18, 2016. Dkt. Nos. 57, 61. Pretrial submissions were due on March 28, 2016. Mr. Viswanathan had notice of the due date of pretrial materials from the Court's January 14, 2016 order, Dkt. No. 61, and notice of the expected contents of pretrial submissions from the Court's Individual Rules. Mr. Viswanathan made no objection to the Court's procedures or scheduling order.

Although Mr. Viswanathan participated in the creation of a joint pre-trial report, he failed to timely submit proposed findings of fact and conclusions of law, a pretrial memorandum of law, any documentary trial exhibits, any deposition excerpts to be offered as substantive evidence, any affidavits constituting direct testimony of witnesses, or a list of affiants he intended to cross-examine. Nor did he make any request for an extension in advance of the March 28, 2016, due date. Despite not hearing from counsel on or before March 28, 2016, on April 4, 2016, the Court *sua sponte* extended the time and instructed Mr. Viswanathan to submit the late proposed findings of fact and conclusions of law, and any other pretrial submissions, no later than April 6, 2016, or to submit a letter by that date showing good cause why this could not be accomplished. Failure to do so, the Court stated, would result in the preclusion of any pretrial materials not submitted by April 6, 2016. Dkt. No. 67. Mr. Viswanathan failed to submit pretrial materials by April 6, 2016, failed to timely request an extension of the deadline, and failed to show good cause for these lapses.

The Court declined to further extend the deadline for pretrial submissions. Dkt. No. 72. Mr. Viswanathan defaulted despite notice, opportunities to object to the Court's schedule and procedures, and a *sua sponte* extension of time. Plaintiffs had already been prejudiced by the long history of delays in this case. Moreover, Mr. Viswanathan had access to Plaintiffs' pretrial submissions from March 28, 2016. Plaintiffs would have been further prejudiced if Mr. Viswanathan were permitted to take advantage of access to their timely submissions in preparing his own. Accordingly, the Court precluded submissions from Defendants dated after April 6, 2016, and refused to take testimony from witnesses whose affidavits were not submitted to the Court prior to that date, as required by Individual Rule 5.F. Dkt. No. 72. As a result, the only defense witness was Defendant Satinder Sharma, whose affidavit had been submitted to the Court by Mr. Kaushik prior to his withdrawal.

The Court held a bench trial on April 18, 2016. At the bench trial, the Court heard live cross-examination and re-direct testimony from Tapia, Castillo, and Balderas, as well as Sharma. After the bench trial, the Court ordered post-trial briefing and proposed findings of fact from the

3

parties. Plaintiffs timely filed a memorandum of law and proposed findings of fact and conclusions of law. Dkt. Nos. 80, 81. Defendants' memorandum of law, and their proposed findings of fact and conclusions of law, were due on June 8, 2016. On the due date, shortly before the close of business, Mr. Viswanathan filed a request for extension of time. Dkt. No. 82. The Court denied the requested extension because it was filed less than 48 hours prior to the deadline, in contravention of the Court's individual rules. Dkt. No. 83. However, it permitted Mr. Viswanathan to file his submissions on June 9, 2016. Mr. Viswanathan filed proposed findings of fact and conclusions of law on that date. On June 16, 2016, after Plaintiffs submitted their reply, Mr. Viswanathan requested leave to file a memorandum of law. Dkt. No. 88. The Court denied this request and stated that briefing was closed. Dkt. No. 90.

## II.  Findings of Fact

The following section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1). These Findings of Fact are drawn from witness testimony submitted in the form of affidavits, witness testimony at trial, and the parties' trial exhibits. The Court finds Plaintiffs' affidavits and testimony to be credible. Defendants' employment records, such that exist, largely corroborate Plaintiffs' testimony. If Plaintiffs' general statements are contradicted by specifics in Defendants' employment records, however, the Court credits the latter. The Court did not consider Sharma's testimony regarding the hours that Plaintiffs worked because he had no personal knowledge of the subject, and what secondhand information he related was inadmissible hearsay under Federal Rule of Evidence 802. *See* Tr. 109:8–22. With these general findings in mind, the Court finds that the following facts have been established by a preponderance of the evidence.

### A.  Defendants

Brick Lane Curry House is an Indian restaurant located in Manhattan. Tr. 4:19–20. The restaurant is owned and operated by Defendant BLCH 3rd Ave. LLC ("BLCH"), a New York

corporation. Castillo Aff. ¶¶ 2–3; Balderas Aff. ¶¶ 2–3; Tapia Aff. ¶¶ 2–3. Defendants Ajit Bains ("Bains") and Satinder Sharma are 50/50 shareholders of BLCH. Tr. 5:1–2, 99:20–24.

BLCH's annual gross volume of sales and business done was over $500,000 during the relevant time period. Tr. 5:3–5. BLCH's employees regularly handled food brought in from outside New York State, and Balderas and Tapia also handled soda from out of state. Castillo Aff. ¶ 10; Balderas Aff. ¶ 12; Tapia Aff. ¶ 12.

Sharma was involved in the general management of the restaurant, Tr. 100:3–6, though he was not the general manager, Tr. 100:10–22. He is a chef, and he cooked at the restaurant prior to becoming a part owner. Tr. 101:13–15. Sharma came to the restaurant on a daily basis. Tr. 26:22–24, 55:23–56:4; Castillo Aff. ¶ 5; Tapia Aff. ¶ 5. At the restaurant Sharma tasted the food being prepared, gave instructions to the managers, and supervised the staff in cleaning and organizing the restaurant. Tr. 26:25–27:9; 55:15–21; 101:4–19; Castillo Aff. ¶ 5; Tapia Aff. ¶ 5; Balderas Aff. ¶ 5. He reviewed payroll records each week. Tapia Aff. ¶ 5. Plaintiffs claim that Sharma hired the restaurant's floor manager, but at trial Sharma testified credibly that the hiring was done by the then-general-manager, Vivek Deora. Tr. 104:12–24. The Court concludes that Plaintiffs have not established that Sharma participated in the floor manager's hiring in a meaningful way.

### B. Plaintiffs

Plaintiff Eufemia Castillo was employed at Brick Lane Curry House as a dishwasher, but her duties also included sweeping, mopping, cleaning, preparing ingredients for cooking, and making deliveries. Castillo Aff. ¶ 8. Plaintiffs Romulo Ricano Balderas and Valentin Tapia were nominally employed as delivery workers. Balderas Aff. ¶ 8; Tapia Aff. ¶ 8. However, both were required to spend around six hours of each workday (*i.e.*, whenever they were not making deliveries) performing other tasks including dishwashing, sweeping, mopping, cleaning, taking out garbage, moving food inventory, and preparing ingredients for cooking. Balderas Aff. ¶¶ 9–10; Tapia Aff. ¶¶ 9–10; Tr. 19:24–20:10, 112:1–15.

Castillo was employed by Defendants from November 1, 2012, to October 5, 2014. Castillo Aff. ¶ 7; Tr. 52:3–4, 59:9–11. During a period from November 2012 to February 2013, Castillo worked from around 11:00 am until around 11:30 pm six days per week, for a total of around 75 hours per week. Castillo Aff. ¶ 11. During this period, she was paid a fixed salary of $350 per week. *Id.* ¶ 17. From around March 2013 through the beginning of October 2014, Castillo worked from around 1:00 pm to around 11:30 pm five days a week, for a total of around 52.5 hours per week. *Id.* ¶ 12. During the week of May 6, 2013, Castillo worked six days instead of her usual five. Pls.' Ex. 3. She was typically paid $290 per week from the beginning of this period until July 2013, and thereafter $315 per week. Castillo Aff. ¶¶ 18–19; Pls.' Ex. 3. However, according to Defendants' payroll records, which the Court credits, there were several weeks in which Castillo was paid more or less than the typical amounts described in Castillo's affidavit. Pls.' Ex. 3.

Balderas was employed by Defendants from July 2013 until February 2014. Balderas Aff. ¶ 7; Tr. 73:20–23. He worked from around 11:00 am until around 11:30 pm six days a week (75 hours per week), but worked every day during three weeks in September 2013 (87.5 hours per week). Balderas Aff. ¶ 13, Pls.' Ex. 5. Balderas worked only three days during the week of July 22, 2013. Pls.' Ex. 5. Balderas was generally paid $375 per week during his employment, except during September 2013, when he received $450 per week. Balderas Aff. ¶ 18. Defendants' payroll records, which the Court credits, identify a number of weeks in which Balderas was not paid his usual salary. Pls.' Ex. 5.

Tapia was employed by Defendants from January 2013 until July 2013. Tapia Aff. ¶ 7; Tr. 18:3–4. He worked from around 11:00 am until around 11:30 pm on weekdays, and from 11:00 am until 12:00 am on Saturdays, for a total of approximately 75.5 hours per week. Tapia Aff. ¶ 13. Tapia worked only four days during the week of February 24, 2013. Pls.' Ex. 4. Tapia generally received a weekly salary of $290. Tapia Aff. ¶ 18; Pls.' Ex. 4. However, per the Defendants' payroll records, which the Court credits, Tapia received less on several weeks. Pls.' Ex. 4. Tapia was required to purchase items for his work, including three bicycles costing $200,

6

$250, and $300, respectively. Tapia Aff. ¶ 31. During cross-examination, Defense counsel elicited testimony from Tapia that he had opted into another FLSA action against a previous employer brought by the same firm that represents the Plaintiffs in this suit. Tr. 45:12–46:18. Defendants have not explained why this fact should negatively impact Tapia's credibility, and the Court finds that it does not.

None of the three plaintiffs ever received overtime pay at time and a half for hours worked in excess of 40 per week. Castillo Aff. ¶ 21; Balderas Aff. ¶ 21; Tapia Aff. ¶ 21; Tr. 48:1–3. Nor did they receive extra compensation for working more than 10 hours in a day. Castillo Aff. ¶ 22; Balderas Aff. ¶ 22; Tapia Aff. ¶ 22. Plaintiffs frequently worked an additional 15–30 minutes after their departure time, but never received additional pay for doing so. Castillo Aff. ¶ 20; Balderas Aff. ¶ 19; Tapia Aff. ¶ 19. Plaintiffs were never provided with wage statements or written notices regarding their wage rate, nor were they notified of any credits that Brick Lane Curry House intended to deduct from their pay. Castillo Aff. ¶¶ 24–25, 27; Balderas Aff. ¶¶ 20, 24–26, 28; Tapia Aff. ¶¶ 20, 24–26, 28. Defendants did not post any notices containing information about state or federal minimum wage and overtime laws on their premises, nor did they otherwise provide Plaintiffs with written information regarding these laws. Castillo Aff. ¶¶ 26, 28; Balderas Aff. ¶¶ 27, 29; Tapia Aff. ¶¶ 27, 29.

### III. Conclusions of Law

Plaintiffs assert that Defendants violated the FLSA and NYLL by failing to pay statutorily required wages, overtime, and "spread of hours" compensation; failing to provide required wage notices and statements; and failing to reimburse Tapia for equipment costs. Plaintiffs bear the burden of proof to establish all claims and damages by a preponderance of the evidence. *See, e.g., Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 392 (E.D.N.Y. 2013). For the reasons that follow, the Court concludes that Plaintiffs have met their burden of proof on all claims against BLCH. However, Plaintiffs have failed to demonstrate that Bains or Sharma should be personally liable for these violations.

## A. Threshold Issues

Before addressing specific questions regarding Defendants' liability, the Court notes that the threshold requirements for bringing suit under the FLSA and NYLL in this Court have been met. The Court has subject matter jurisdiction over the FLSA claims under 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367 because they form part of the same case or controversy. Venue is proper in the Southern District of New York because BLCH is a New York corporation doing business in Manhattan. 28 U.S.C. § 1391(d). BLCH was engaged in interstate commerce within the meaning of the FLSA—and thus subject to its wage and overtime provisions—because its annual gross volume of sales and business was over $500,000, Tr. 5:3–5, and its employees regularly handled food and drink brought in from outside New York State. 29 U.S.C. § 203(s); Castillo Aff. ¶ 10; Balderas Aff. ¶ 12; Tapia Aff. ¶ 12.

## B. BLCH Violated the FLSA and NYLL

The Court now turns to the questions of liability and damages. Plaintiffs allege that BLCH violated the FLSA and NYLL, and seek to hold it liable for unpaid wages and overtime, the cost of purchasing tools of the trade, "spread of hours" pay, statutory damages, and liquidated damages. As will be explained below, the Court agrees that Plaintiffs are entitled to all these forms of damages, except that they may not recover double liquidated damages.

### 1. BLCH Is Liable for Failure to Pay Minimum and Overtime Wages

Plaintiffs' primary claim is that BLCH failed to pay them statutorily-required minimum and overtime wages. The FLSA sets a federal minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The New York minimum wage for restaurant workers was $7.25 per hour during 2012 and 2013. N.Y. Comp. Codes R. & Regs. ("NYCRR"), tit. 12 § 146-1.2(a). On December 31, 2013, it increased to $8.00, and remained at that rate through 2014. *Id.*

Both the FLSA and NYLL permit employers to pay a lower wage to tipped employees if they earn a sufficient amount of tips. 29 U.S.C. §§ 203(m); 12 NYCRR § 146-1.3. However, under each statute, an employee must be given notice before being paid at the tip credit wage. 29 U.S.C. § 203(m); 12 NYCRR § 146-1.3; *see, e.g., Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497–98 (S.D.N.Y. 2015). There is no dispute that BLCH never notified Plaintiffs that they were being paid at a tip credit wage, so the standard minimum wage applies. Castillo Aff. ¶ 27; Balderas Aff. ¶¶ 20, 24, 28; Tapia Aff. ¶¶ 20, 24, 28.

Under both federal and state law, an employee who works more than 40 hours per week must be paid time and a half for each hour worked beyond 40. 29 U.S.C. § 207(a); 12 NYCRR § 146-1.4. For employees paid a weekly salary rather than an hourly rate, there is a rebuttable presumption under the FLSA that the salary covers no more than 40 hours per week. *See, e.g., Pinovi v. FDD Enters.*, No. 13 CIV. 2800 GBD KNF, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015) (collecting cases). The same presumption has been codified for restaurant employees under New York law. 12 NYCRR § 146-3.5(b). Defendants have made no effort to rebut the presumption in this case, so the Court will apply it here.

"Plaintiffs bear the burden of demonstrating the number of hours that they worked." *Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344 MHD, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015). However, if an employer has failed to keep detailed and accurate records, then Plaintiffs need only produce evidence sufficient to determine hours worked "as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). The burden then shifts to the employer to produce evidence "of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* Plaintiffs' recollections are sufficient to meet *Anderson*'s threshold and shift the burden to the employer. *Id.*

The Court generally credits Plaintiffs' recollections of their salaries and days and hours worked. The burden thus shifts to Defendants to produce evidence negating the Court's ability

9

to draw a just and reasonable inference from these recollections. Defendants' records in this case generally provide only a weekly salary and a date; a small number of entries list the number of days worked that week. *See* Pls.' Exs. 3–5. As noted in the findings of fact, the Court credits these records for what they are worth. Where the listed salary or number of days contradicts Plaintiffs' recollections, the Court will follow the records. For all other matters, however, the Court will rely on Plantiffs' recollections, including for those periods not covered by Defendants' records at all.

Castillo was generally paid $350 per week from November 2012 to February 2013. Castillo Aff. ¶ 17. Applying the presumption that this covered 40 hours of work, she was paid $8.75 per hour. She was generally paid $290 per week, or $7.25 per hour, from March 2013 to July 2013. *Id.* ¶ 18. She was generally paid $315 per week, or $7.88 per hour, from July 2013 until October 2014. *Id.* ¶ 19. She worked 75 hours per week from November 1, 2012 to February 2013, and 52.5 hours per week from March 2013 through the beginning of October, 2014. *Id.* ¶¶ 11, 12. Accounting for weeks in which Defendants' records show that Castillo did not receive her typical salary or did not work her normal number of days, the Court determines that by a preponderance of the evidence, Castillo is entitled to $810 in unpaid minimum wages, and $19,589.84 in unpaid overtime.

Balderas was generally paid $375 per week, or (applying the 40-hour presumption) $9.38 per hour, from July 2013 to February 2014. Balderas Aff. ¶¶ 7, 13. Balderas worked 75 hours per week, except for three weeks in September when he worked 87.5 hours. *See id.* ¶ 13; Pls.' Ex. 5. Accounting for weeks in which Defendants' records show that Balderas did not receive a typical salary or work his normal number of days, the Court determines that by a preponderance of the evidence, Balderas is entitled to $461 in unpaid minimum wages, and $14,156.35 in unpaid overtime.

Tapia was generally paid $290 per week, or (applying the 40-hour presumption) $7.25 an hour, from January 2013 to July 2013. Tapia Aff. ¶¶ 7, 18; Pls.' Ex. 4. He worked 75.5 hours per week. Tapia Aff. ¶ 13. Accounting for weeks in which Defendants' records show that Tapia

did not receive a typical salary or did not work his normal number of days, the Court determines that by a preponderance of the evidence, Tapia is entitled to $464 in unpaid minimum wages and $9,384 in unpaid overtime.

### 2. BLCH Is Liable for Tools of the Trade

BLCH required Tapia to purchase bicycles to use in his work making deliveries, and Tapia now seeks to recover their cost. Tapia Aff. ¶ 31. "[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," then the costs of such tools are deducted from the employee's wages for purposes of calculating whether he was paid minimum wage and overtime under the FLSA and NYLL. 29 C.F.R. § 531.35; 12 NYCRR § 146-2.7(c). "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (adopting report and recommendation); *see also, e.g.*, *Hernandez v. Jrpac Inc.*, No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *30 (S.D.N.Y. June 9, 2016); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257–58 (S.D.N.Y. 2008). Because, as the Court determined above, Tapia's weekly salary did not provide him with the minimum compensation guaranteed by the FLSA and NYLL for his hours worked, he is also entitled to recover $750 for purchasing tools of the trade.

### 3. BLCH Is Liable for Spread of Hours Wages

Plaintiffs next seek to recover "spread of hours" wages under NYCRR § 146-1.6. On each day in which the beginning and end of the workday are more than 10 hours apart, a worker is entitled to "one additional hour of pay at the basic minimum hourly rate." *Id.* § 146-1.6(d). This provision applies regardless of the employee's hourly salary. *Id.*; *see Andrade v. 168 First Ave Rest. Ltd.*, No. 14CIV8268JPOAJP, 2016 WL 3141567, at *5 (S.D.N.Y. June 3, 2016), *report and recommendation adopted,* No. 14-CV-8268 (JPO), 2016 WL 3948101 (S.D.N.Y. July

11

19, 2016). Above, the Court found that Plaintiffs worked more than a 10 hour spread every workday. Nothing in the record suggests that Plaintiffs received spread of hours pay. Crediting Plaintiffs' recollections and Defendants' partial records, the Court determines that by a preponderance of the evidence, Castillo is entitled to $3,891, Balderas $1,291.25, and Tapia $1,073 in spread of hours pay.

### 4. BLCH Is Liable for Statutory Damages for Failure to Provide Wage Notices and Statements

Plaintiffs also seek to recover two forms of statutory damages under New York law. During the relevant period, NYLL § 195(1)(a) (April 9, 2011) required employers to provide employees with notices informing them of their rate of pay at the time of hiring and on or before February 1 of each subsequent year of employment. Statutory damages of $50 per week were available for violations of this provision, up to a maximum of $2,500. NYLL § 198(1-b) (April 9, 2011). A second provision, NYLL § 195(3) (April 9, 2011), required employers to provide employees with a wage statement with each payment of wages. Statutory damages of $100 per week were available for failure to furnish wage statements, again up to a maximum of $2,500. NYLL § 198(1-d) (April 9, 2011). Above, the Court found that none of the Plaintiffs received either wage notices or wage statements. Accordingly, by a preponderance of the evidence, Castillo is entitled to $5,000 in statutory damages, Balderas is entitled to $3,950, and Tapia is entitled to $3,750.

### 5. BLCH Is Liable for Liquidated Damages

Finally, Plaintiffs seek to recover liquidated damages. The FLSA provides for liquidated damages equal to the unpaid wages and overtime recovered. 29 U.S.C. § 216(b). An employer may avoid liquidated damages if he can show that he acted "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. *Id.* § 260. The burden is on the employer to demonstrate good faith. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). To meet this burden, an employer

must have taken active steps to ascertain and comply with the FLSA's requirements. *Id.* NYLL provides for liquidated damages on identical terms to the FLSA. NYLL §§ 198(1–a), 663(1). Liquidated damages under NYLL include spread of hours. *See, e.g.*, *Kim*, 2015 WL 2222438, at *29 n.56. The record contains no evidence of good faith, and Defendants have made no argument on this point. The Court will therefore award liquidated damages.

Plaintiffs argue that they are entitled to recover overlapping liquidated damages under the two statutes, essentially tripling their recovery. Pls.' Post-Trial Mem. of Law at 14. A number of courts in this Circuit have held that double recovery of liquidated damages is permissible because the two provisions serve different purposes: FLSA liquidated damages are said to be "compensatory," while NYLL damages are said to be punitive. *Inclan*, 95 F. Supp. 3d at 505 (citing cases). However, this argument was premised on an older version of the NYLL liquidated damages provision, which required that the employer's failure to comply with the statute be "willful," and provided for liquidated damages on only 25% of the recovered wages. *Id.* at 504. In 2009, the willfulness requirement was changed to match the FLSA's good faith requirement, and on April 9, 2011, the 25% provision was changed to match the FLSA's 100% recovery. *Id.* at 505. Without opining on the appropriate rule for earlier time periods, the Court determines that there is no plausible distinction between the two liquidated damages provisions after April 9, 2011. The Court therefore joins those other courts that have held that liquidated damages under the FLSA and NYLL for periods after April 9, 2011, do not stack. *See id.* at 506; *Andrade*, 2016 WL 3141567, at *7 ("The 'prevailing view' now is that double liquidated damages should not be awarded.") (collecting cases). Accordingly, by a preponderance of the evidence, Castillo is entitled to $24,290.84 in liquidated damages, Balderas is entitled to $15,908.60, and Tapia is entitled to $11,671.

### C. The Individual Defendants Are Not Liable

In addition to seeking relief against BLCH, Plaintiffs also seek to hold Bains and Sharma personally liable for the restaurant's labor law violations. Plaintiffs argue that Bains and Sharma, the owners of BLCH, were their employers within the meaning of the FLSA and NYLL.

The FLSA defines "employ" to mean "to suffer or permit to work," 29 U.S.C. § 203(g), and defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). The FLSA's definition of "employer" is broader than the common-law agency relationship, "in order to effectuate the remedial purposes of the act." *Barfield*, 537 F.3d at 141. Courts therefore treat "employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42. Such determinations are grounded in "economic reality rather than technical concepts." *Id.* at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (internal quotation marks omitted)). In the absence of guidance from the Second Circuit or the New York Court of Appeals, "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Inclan*, 95 F. Supp. 3d at 511. This Court will do the same.

The key question in determining when an individual is an employer under the FLSA is whether the defendant possessed "operational control" over the employees. *Irizarry v. Catsimatidis*, 722 F.3d 99, 107 (2d Cir. 2013). A defendant exercises operational control "if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. This standard requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation," and is more demanding than the test for corporate liability. *Id.* at 109. In evaluating operational control, the Court considers the four factors from *Carter v. Dutchess Cmty. College*, 735 F.2d 8, 12 (2d Cir. 1984): "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate

and method of payment, and (4) maintained employment records." Satisfying the *Carter* factors is sufficient but not necessary, *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003), and the Court must consider the totality of the circumstances, *Irizarry*, 722 F.3d at 104.

The Court concludes that Sharma did not exercise operational control over Plaintiffs, and thus was not their employer. He did not hire and fire employees. He was not involved in setting schedules or other conditions of employment. For instance, there is no evidence that Sharma was involved in disciplining employees or monitoring attendance. He was not involved in setting compensation or making payments. Nor was he directly responsible for maintaining employment records, though he did review them at the end of each week. Only the fourth *Carter* factor is even partially satisfied. It is true that Sharma was a 50% shareholder of BLCH, but "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Irizarry*, 722 F.3d at 109. Sharma also frequented the restaurant and played at least some part in directing employees and managers in carrying out their tasks. But several courts in this Circuit have found that an ownership interest coupled with a role in supervising employees is not sufficient to sustain individual FLSA liability. For instance, in *Salinas v. Starjem Restaurant Corp.*, the court held that the CEO and majority shareholder of a restaurant was not a FLSA "employer" of the restaurant's staff even though she was in the restaurant daily acting as a hostess and would instruct the staff as part of that role. 123 F. Supp. 3d 442, 450–51, 464 (S.D.N.Y. 2015) ("[A]n individual does not become an employer merely by directing employees to carry out tasks related to customer service."); *see also Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349 ARR VMS, 2013 WL 5210142, at *7 (E.D.N.Y. Sept. 13, 2013) (adopting report and recommendation) (employee supervisor with an ownership interest in the business was not a FLSA employer). The Court is persuaded by these authorities, and determines that Sharma's role in reviewing payment records is not sufficient to change the outcome of this analysis. *See Salinas*, 123 F. Supp. 3d at 464 (individual defendant's role in signing paychecks was "not probative" because she was "otherwise not involved in employee compensation").

15

Plaintiffs have therefore failed to show by a preponderance of the evidence that Sharma was their employer within the meaning of the FLSA and NYLL.

Bains is an easier case than Sharma. The only information before the Court regarding Bains is that he is a 50% shareholder in BLCH. As noted above, this is insufficient, standing alone, to establish individual FLSA liability. *Irizarry*, 722 F.3d at 109. Accordingly, Plaintiffs have failed to show by a preponderance of the evidence that Bains was their employer.

## IV. Conclusion

For the reasons set forth above, the Court finds that BLCH has violated the FLSA and NYLL. The Court awards Castillo (1) $810 in unpaid minimum wages, (2) $19,589.84 in unpaid overtime, (3) $3,891 in unpaid spread of hours wages, (4) $5,000 in statutory damages, and (5) $24,290.84 in liquidated damages, for a total of $53,581.69. The Court awards Balderas (1) $461 in unpaid minimum wages, (2) $14,156.35 in unpaid overtime, (3) $1,291.25 in unpaid spread of hours wages, (4) $3,950 in statutory damages, and (5) $15,908.60 in liquidated damages, for a total of $35,767.20. The Court awards Tapia (1) $464 in unpaid minimum wages, (2) $9,384 in unpaid overtime, (3) $750 in reimbursement for tools of the trade, (4) $1,073 in unpaid spread of hours wages, (5) $3,750 in statutory damages, and (6) $11,671 in liquidated damages, for a total of $27,092.

Plaintiffs shall submit any appropriate request for interest, fees, and costs, no later than September 16, 2016. Defendants' response, if any, shall be due September 30, 2016. Plaintiffs' reply shall be due October 7, 2016.

SO ORDERED.

Dated: ~~August~~ Sept 1, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge